**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **PATRICK XUAN MAI,** *Plaintiff,* | § § | |
| **v.** | § § | **PE:26-CV-0002-DC-DF** |
| **UNITED STATES OF AMERICA,** *Defendant.* | § § § | |

**U.S. MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION**

Before the Court are Plaintiff Patrick Xuan Mai's Motions for Preservation and Production of Video Evidence (Docs. 10, 15) and Defendant United States of America's ("USA") Motion to Dismiss (Doc. 14). After due consideration, the undersigned **DENIES** Mai's Motions for Preservation and Production of Video Evidence and **RECOMMENDS** that the USA's Motion to Dismiss be **GRANTED**.

## BACKGROUND

Plaintiff Patrick Xuan Mai, proceeding *pro se*, brings this action against the USA under the Federal Tort Claims Act ("FTCA"), seeking money damages "for injury or loss of property, or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." (Doc. 13 at 1); 28 U.S.C. §§ 1346(b), 2671–2680. Mai's factual allegations are as follows.

On January 6, 2025, Mai was driving northbound on Highway 385 when he encountered a U.S. Customs and Border Protection ("CBP") interior checkpoint, approximately 70 miles north of the Mexico border. (Doc. 13 at 2). Mai was stopped and then directed to a secondary inspection. *Id.* CBP officers instructed him to exit his vehicle

and move away from it; Mai complied. *Id.* The officers then informed him that he had an outstanding warrant before handcuffing him and placing him on a holding bench. *Id.* The CBP officer provided no verification of the warrant. *Id.* As Mai was being handcuffed, the CBP officer forcefully twisted his arm and aggravated Mai's pre-existing shoulder injury, resulting in pain and lasting impairment. *Id.* at 2–3. These acts occurred before any search of Mai's vehicle and despite his full compliance with the CBP officers' instructions. *Id.* CBP officers then searched the trunk and interior of Mai's vehicle. *Id.* at 3. A CBP officer broke the exterior driver-side door handle during the encounter. *Id.* Mai was eventually released without citation, charge, or further incident. *Id.* at 3.

Mai filed this action under the FTCA and applicable Texas state law, bringing claims for negligence, assault, battery, and property damage. (Doc. 13 at 1, 3–4). Mai exhausted his administrative remedies before filing under the FTCA. *Id.* at 2. Mai filed an amended Complaint on May 12, 2026, to which Defendant filed a Rule 12(b)(1) Motion to Dismiss. (Docs. 13, 14). This matter has been fully briefed and is ripe for adjudication. (Docs. 16, 17).

## LEGAL STANDARD

Courts may dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject matter jurisdiction may be found based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Ramming*, 281 F.3d at 161. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.* "Accordingly, the

plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* "[W]hether the United States has waived sovereign immunity pursuant to the FTCA goes to the court's subject-matter jurisdiction . . . and may therefore be resolved on a Rule 12(b)(1) motion to dismiss." *Willoughby v. U.S. ex. rel U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

## Discussion

### I. Video Evidence

As an initial matter, Mai filed two Motions in which he requests that the Court order preservation and production of all video and body camera footage relating to his encounter at the CBP checkpoint. (Docs. 10, 15). The USA attached three video Exhibits to its Motion that allegedly depict this event. (Docs. 14-1, 14-2, 14-3, 14-4). The USA claims to have produced these Exhibits to Mai twice. (Doc. 18 at 1). Even assuming this production does not render Mai's Motions moot, considering the USA's Exhibits and producing all videos depicting the events at the CBP checkpoint is unnecessary.

First, the Court may dismiss for lack of subject matter jurisdiction based on the complaint alone, without considering evidence outside the pleadings. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). The Court is not required to review exhibits attached to a motion and may therefore decline to review the USA's video Exhibits and dismiss on the basis of Mai's Complaint alone if it fails to establish subject matter jurisdiction. *Croy v. United States*, 697 F. Supp. 3d 653, 664 n.3 (W.D. Tex. 2023); *see* 5B C. Wright & A. Spencer, Federal Practice and Procedure § 1350 (4th ed. 2024) ("When the motion is directed solely at the sufficiency of the complaint's jurisdictional allegations, it

is unlikely that affidavits or other materials outside the pleadings will be necessary.").

Second, the Exhibits are unnecessary to resolve the jurisdictional dispute here. The USA does not argue that consideration of the Exhibits is necessary to dismiss for lack of subject matter jurisdiction. (Doc. 18 at 1). Mai argues they are important because they go to "[w]hether the force facilitated the vehicle inspection or seized Plaintiff's person on a warrant basis[,] . . . whether the inspection required Plaintiff's participation, whether he was apart from the vehicle and compliant, what the officer said about the reason for handcuffing him, and the manner and degree of force used." (Doc. 15 at 1). For reasons that will be discussed in greater detail below, none of these questions are dispositive as to whether this Court has subject matter jurisdiction. Nor are they central to the USA's argument, which is built around the "undisputed [fact] that Plaintiff and his vehicle were detained at the secondary inspection location at the Border Patrol checkpoint for all events giving rise to the claim at issue." (Doc. 14 at 1).

Lastly, even if ordering production and preservation were justified, this Court must resolve its own jurisdiction before ordering such relief. "Although a federal court always has jurisdiction to determine its own jurisdiction, it may not otherwise take judicial action in the absence of jurisdiction . . . ." *C.M. v. United States*, 672 F. Supp. 3d 288, 319 (W.D. Tex. 2023) (internal citations and quotations omitted); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause."). For the reasons discussed in detail below, this Court lacks subject matter jurisdiction. Accordingly, the undersigned will deny Mai's Motions for Preservation and Production of Video Evidence. (Docs. 10, 15).

## II. The FTCA's Customs-Duty Exception and Subject Matter Jurisdiction

The FTCA's customs-duty exception prevents this Court from exercising subject matter jurisdiction. "The United States, as sovereign, is immune from suit save as it consents to be sued" and sovereign immunity, if applicable, deprives this Court of subject matter jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The FTCA "'waive[s] the sovereign immunity of the United States for certain torts committed by federal employees' acting within the scope of their employment." *Brownback v. King*, 592 U.S. 209, 212 (2021) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475–76 (1994)). Under the FTCA's customs-duty exception, the USA's sovereign immunity is not waived for "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs." 28 U.S.C. § 2680(c).

Mai brings claims under Texas law against the USA for negligence, assault, battery, and property damage that stem from the alleged torts of the USA's CBP officers. The USA invokes the customs-duty exception. The undersigned finds the customs-duty exception applies here because Mai's claims arose from events that occurred during the detention of a good—Mai's vehicle—and related to a customs-duty. Mai's central argument is that the customs-duty exception does not bar tort claims involving harm to his person, because the exception is targeted at claims involving goods and property, not people. (Doc. 16 at 2–3). Mai relies heavily on *Jeanmarie*, where the Fifth Circuit stated that the customs-duty exception "deals only with the detention of goods, not persons." *Id.* at 1; *Jeanmarie v. United States*, 242 F.3d 600, 604 (5th Cir. 2001).

This quote requires context. When it made that statement, the Fifth Circuit was recognizing that claims involving "the detention of a person after the search and detention of goods was completed" may fall outside of the customs-duty exception because they cease to be incident to a detention of goods and would instead become incident to the detention of a person. *Jeanmarie*, 242 F.3d at 604. The Court did not hold that any tort claim involving unnecessary physical harm to a person falls outside of the customs-duty exception. To the contrary, it ultimately found that the customs-duty exception barred the plaintiff's assault and battery claims because the harm occurred while the plaintiff's vehicle was detained and therefore "arose out of and were associated *in some way* with the detention of goods." *Id.* (emphasis added) ("[A]ctions even remotely related to a Customs agent's official duties are covered by the exception in § 2680(c)."). Likewise, here, Mai's claims are associated with the detention of a good because they arose while Mai's car was detained at a CBP checkpoint, before the search and detention was completed.

Mai also argues *Davila* places the "[t]he dividing line" at "whether the claim arose from the detention of the vehicle or from a separate seizure of the person." (Doc. 16 at 2); *Davila v. United States*, 713 F.3d 248, 256 (5th Cir. 2013). But in *Davila* the Fifth Circuit found the customs-duty exception did not apply because the claims arose "out of the officers' arrest and detention of [plaintiff] in a county jail, located away from the checkpoint . . . [when] the search had long since ended" and no vehicle was detained. 713 F.3d at 257. Read together, *Jeanmarie* and *Davila* make clear that "the question is not a matter of property versus person, but the timing question of whether the detention of

goods had ceased prior to the alleged personal injury." *Ramirez v. Pompa Garcia*, No. 2:18-CV-446, 2019 WL 5595367, at *3 (S.D. Tex. Oct. 30, 2019).

Not so here, as it is undisputed that Mai's torts claims arose while his vehicle was detained at a CBP checkpoint and before it was searched.[1] (Doc. 13 at 2–3). "[I]f the detention of the vehicle is ongoing," as in Mai's case, "then the actions stemming from that detention are covered under § 2680(c)." *Mireles v. U.S. Customs & Border Prot.*, No. B:13-197, 2014 WL 12770213, at *7 (S.D. Tex. Sept. 11, 2014), *R. & R. adopted in part and rejected in part on other grounds*, 2014 WL 12770112 (S.D. Tex. Nov. 10, 2014); *Ramirez*, 2019 WL 5595367, at *3 ("[P]ersonal injuries suffered while the property detention is ongoing are within the broad scope of the customs-duty exception.").

Thus, regardless of what happened at the border checkpoint, the fact that Mai's car was actively detained means that the customs-duty exception applies and his personal injury claims fail. Mai's claim for property damage to his vehicle is defective for the same reason: "The language of [§ 2680(c)] as it was written leaves us no choice but to . . . [hold] that the [FTCA] does not cover suits alleging that customs officials injured property that had been detained by the Customs Service." *Kosak v. United States*, 465 U.S. 848, 862 (1984); *see also Formula One Motors, Ltd. v. United States*, 777 F.2d 822, 823 (2d Cir. 1985) (holding that destruction of car detained by DEA agents "fell within the scope of section 2680(c)").

Mai also argues that his claims relate to a law-enforcement duty and not a customs-

1. For this reason, consideration of the USA's Exhibits is unnecessary as the dispositive jurisdictional fact—that Mai's vehicle was actively detained at the border checkpoint—is undisputed. (Doc. 13 at 2–3).

duty because they arose from a warrant-based detention. (Doc. 16 at 2–3). The Fifth Circuit rejected this contention in *Allyn-Feuer v. Doe*, finding the argument "that the customs-duty exception should not apply because the Agents were not seeking to assess or collect any customs duty, but were performing a law enforcement task" had "no support in our caselaw." No. 25-40204, 2026 WL 1269833, at *3 (5th Cir. May 8, 2026) (internal quotations omitted). Mai distinguishes *Allyn-Feuer* by arguing it involved a canine search and subsequent detention, but not a warrant-based detention. (Doc. 16 at 3).[2] Regardless, the overarching principle from *Allyn-Feuer* is that the fact a claim arises in part from the performance of law enforcement duties does not mean the customs-duty exception is inapplicable. 2026 WL 1269833, at *3. Many of the tasks performed at border checkpoints such as stops, searches, and arrests could be classified as law enforcement tasks; that does not mean they cannot also fall under the customs-duty exception.

The undersigned will, in closing, acknowledge Mai's understandable frustration at the seemingly blanket protection for the USA under the customs-duty exception, even when—as is the case here—the challenged actions took place over 70 miles from the border. The Fifth Circuit has itself recognized the "troubling" result of its interpretation of the customs-duty exception "is that Border Patrol agents may have carte blanche to commit any intentional tort while at any similar border checkpoint." *Allyn-Feuer*, 2026 WL 1269833, at *3. Under this interpretation, CBP agents could theoretically detain someone's vehicle at a border check point and shoot them in broad daylight unprovoked

2. Mai also points to the fact that *Allyn-Feuer* is unpublished and therefore not precedential. (Doc. 16 at 3). Although he is correct that "unpublished cases are not precedential," the Fifth Circuit, and this Court by proxy, "consider their analyses to be persuasive." *Brewster v. Dretke*, 587 F.3d 764, 768 n.1 (5th Cir. 2009). And regardless, he does not point to any contrary authority to support his position.

without the USA facing liability for the intentional torts that would surely flow therefrom. But the Fifth Circuit has placed the onus on Congress to change this result. *Id.* ("[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended. . . . In barring Allyn-Feuer's claims, we apply the customs-duty exception as intended by the statute." (internal citation and quotations omitted)). Until that day comes, this Court is bound to apply the Fifth Circuit's interpretation of the customs-duty exception. *See Wearry v. Foster*, 33 F.4th 260, 278 (5th Cir. 2022) (Ho, J., dubitante) ([W]e're duty-bound to follow precedent. And that means we're duty-bound to follow precedent, full stop—not just when it leads to results we like."). Accordingly, the undersigned finds that the customs-duty exception applies and deprives this Court of subject matter jurisdiction over Mai's claims.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned **DENIES** Mai's Motions for Preservation and Production of Video Evidence (Docs. 10, 15) and **RECOMMENDS** that the USA's Motion to Dismiss be **GRANTED**. (Doc. 14). Mai's claims should be **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED**.

SIGNED this 15th day of July, 2026.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).