IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

PECOS DIVISION

| | | |
|---|---|---|
| PATRICK XUAN MAI,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF<br><br>AMERICA,<br><br>　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 4:26-cv-00002-DC-DF |

**PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S**

**ORDER AND REPORT AND RECOMMENDATION (DOC. 19)**

Plaintiff Patrick Xuan Mai, proceeding pro se, respectfully objects under 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure 72(a) and 72(b) to the Magistrate Judge's Order and Report and Recommendation entered and served via CM/ECF on July 15, 2026 (Doc. 19) (the "Report"). These Objections are timely filed within fourteen days of service. Fed. R. Civ. P. 72(a), (b)(2). The Report both recommends dismissal under the Federal Tort Claims Act's customs-duty exception, 28 U.S.C. § 2680(c), and denies Plaintiff's Motions for Preservation and Production of Video Evidence (Docs. 10, 15). Plaintiff objects to specified portions of each. The recommendation is reviewed de novo, 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); the nondispositive Order must be set aside or modified if it is clearly erroneous or contrary to law, Fed. R. Civ. P. 72(a).

The Report rests on a facial attack under Rule 12(b)(1). On a facial attack, the Court must accept as true all well-pleaded allegations of the Amended Complaint. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The

Magistrate Judge expressly elected this posture, resolving the motion "on the basis of Mai's Complaint alone." (Doc. 19 at 3–4 & n.1). The Amended Complaint alleges the following sequence, which must be accepted as true:

1. Plaintiff exited his vehicle and moved away from it when instructed. At that moment, no CBP agent was near the vehicle and no inspection or search had begun. (Am. Compl. ¶¶ 12–13).

2. While Plaintiff stood away from the vehicle, a CBP officer stated that Plaintiff had an outstanding warrant, provided no verification, and invoked the warrant as the justification for detaining and handcuffing him. (Am. Compl. ¶¶ 14–16).

3. The handcuffing and the force that aggravated Plaintiff's shoulder injury occurred while Plaintiff was standing away from the vehicle. (Am. Compl. ¶¶ 17–18).

4. Only after Plaintiff was handcuffed and secured on a holding bench did agents begin searching the vehicle. (Am. Compl. ¶ 19).

5. Plaintiff was released without citation, charge, arrest record, or any warrant documentation. (Am. Compl. ¶ 21).

**Objection 1: The Report Erroneously Treats the Character of the Seizure as an "Undisputed Fact" of Ongoing Vehicle Detention**

The Report repeatedly characterizes it as "undisputed" that "Plaintiff and his vehicle were detained at the secondary inspection location . . . for all events giving rise to the claim." (Doc. 19 at 4, 7 & n.1). That formulation converts a contested legal characterization into a factual premise.

The Amended Complaint does not allege that the seizure of Plaintiff's person was an incident of vehicle detention. It alleges the opposite sequence: the officer invoked a warrant as the justification for seizing Plaintiff's person before any vehicle inspection began, while Plaintiff was

already separated from the vehicle, and the vehicle search commenced only afterward. (Am. Compl. ¶¶ 13–19). On a facial attack, those allegations control.

Defendant's own Motion confirms the warrant-based character of the seizure. The United States states as fact that "[a] search based on Mai's license returned a non-extraditable California warrant," and it defends the officers' force—"[e]ven in the warrant context"—as force "necessary to make an arrest or search" under Texas arrest law. (Doc. 14 at 6 n.1 (citing Tex. Penal Code Ann. § 9.51(a))). However that footnote is weighed, it acknowledges the factual predicate the Amended Complaint pleads: the officers acted on a claimed warrant directed at Plaintiff's person—one the Government itself describes as non-extraditable—and the Government's defense of the force sounds in the law of arrest, not the law of inspection. The Report's treatment of the encounter as, indisputably, nothing more than an incident of ongoing vehicle detention cannot be squared with Defendant's own account.

By treating the legal conclusion that the events "arose from" ongoing vehicle detention as an undisputed fact, the Report inverted the proper analysis. Whether the claims "aris[e] in respect of the detention of any goods" under 28 U.S.C. § 2680(c) is a legal question that must be answered after accepting the pleaded sequence, not by collapsing the sequence into a single label.

**Objection 2: The Report Adopts a Purely Temporal Rule for § 2680(c) That Is Not Compelled by the Statute or by Published Fifth Circuit Authority**

The Report holds that the customs-duty exception bars Plaintiff's claims solely because the alleged torts occurred while Plaintiff's vehicle remained at the checkpoint—"regardless of what happened at the border checkpoint." (Doc. 19 at 7). Under this rule, the only relevant inquiry is chronological overlap. That reading is not required by the statute or by published precedent.

Section 2680(c) excepts claims "arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of

customs." The Supreme Court has treated the operative phrase as equivalent to "arising out of" the detention of goods, *Kosak v. United States*, 465 U.S. 848, 854 (1984), and has applied the exception to claims that detained property was injured while in the Government's custody, *id.* at 862. "Arising out of" is the language of causation, not chronology: the claim must result from the detention of goods, not merely accrue while a detention is underway nearby.

The published Fifth Circuit decisions do not merely accommodate that causal understanding—they state it. In *Jeanmarie v. United States*, 242 F.3d 600 (5th Cir. 2001), customs agents at a port of entry used force to restrain a plaintiff who had defied their instructions during the ongoing inspection of his vehicle, and the court held those claims barred because they "arose out of and were associated in some way with the detention of goods." *Id.* at 604. But *Jeanmarie* articulated the governing line expressly, agreeing with the Ninth Circuit that "notwithstanding the fact that intentional tort claims arising out of arrests are not barred by § 2680(c), and are in fact permitted by § 2680(h), such claims are barred by the customs-duty exception if the alleged torts arose from the inspection, seizure, or detention of goods by a Customs agent." *Id.* (agreeing with *Gasho v. United States*, 39 F.3d 1420, 1433–34 (9th Cir. 1994)); see *id.* (noting that § 2680(c) "deals only with the detention of goods, not persons"). Under *Jeanmarie*'s own formulation, the dispositive question is the source of the tort: the inspection and detention of goods, or an arrest of the person. In *Davila v. United States*, 713 F.3d 248 (5th Cir. 2013), the court applied that formulation, holding the exception inapplicable to a claim arising from the officers' arrest and detention of the plaintiff after the checkpoint search had ended—because the claim "did not arise from the inspection, seizure, or detention of goods" and the alleged torts were "unrelated to the vehicle or the detention thereof." *Id.* at 256–57. Read together, *Jeanmarie* and *Davila* turn on whether the personal injury was incident to the ongoing detention and inspection of goods, or instead arose from a separate seizure of the person. The Amended Complaint alleges the latter: the officer invoked a warrant as the justification for seizing and handcuffing Plaintiff—who had complied with every instruction (Am.

Compl. ¶ 12; Doc. 19 at 2)—while he was already separated from the vehicle, and the search commenced only after he was handcuffed. (Am. Compl. ¶¶ 13–19). Indeed, even in purely chronological terms, the inspection of the vehicle had not begun when Plaintiff was seized and injured. Nor can *Jeanmarie*'s observation that "[a]ctions even remotely related to a Customs agent's official duties are covered," 242 F.3d at 604, bear the weight the Report places on it: read that broadly, it would have required the opposite result in *Davila* and would nullify the § 2680(h) proviso discussed below. The phrase takes its content from the officer's customs duties—the inspection and detention of goods—which executing a purported criminal arrest warrant against a person is not.

The purely temporal rule the Report applies is drawn not from any published decision but from two unpublished district-court opinions, *Mireles v. U.S. Customs & Border Prot.*, No. B:13-197, 2014 WL 12770213 (S.D. Tex. Sept. 11, 2014), and *Ramirez v. Pompa Garcia*, No. 2:18-CV-446, 2019 WL 5595367 (S.D. Tex. Oct. 30, 2019), and from the unpublished panel decision in *Allyn-Feuer v. Doe*, No. 25-40204, 2026 WL 1269833 (5th Cir. May 8, 2026). None binds this Court. The Report itself acknowledges where the temporal rule leads: under it, "CBP agents could theoretically detain someone's vehicle at a border check point and shoot them in broad daylight unprovoked without the USA facing liability for the intentional torts that would surely flow therefrom." (Doc. 19 at 8–9). The statute's text does not compel that result, and no published decision requires it.

**Objection 3: The Report Fails to Read § 2680(c) in Harmony with the Law-Enforcement Proviso of § 2680(h)**

In 1974, Congress added a proviso to § 2680(h) restoring the FTCA's waiver, "with regard to acts or omissions of investigative or law enforcement officers of the United States Government," for claims of assault, battery, false imprisonment, false arrest, abuse of process, and malicious prosecution—defining such officers as those "empowered by law to execute searches, to seize

evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h); see *Millbrook v. United States*, 569 U.S. 50, 52–57 (2013). CBP officers meet that definition. Plaintiff does not contend that subsection (h) overrides subsection (c); the exceptions operate independently. But subsections of the same section must be read so that each is given effect. Under the Report's temporal rule, the proviso becomes a dead letter wherever a vehicle is detained—precisely the setting in which federal officers most routinely handcuff, arrest, and use force against people. The causal reading harmonizes the two provisions: subsection (c) governs claims arising from the detention of property, while the (h) proviso preserves claims arising from officers' intentional torts against persons. That is the very line *Jeanmarie* drew, recognizing that intentional tort claims "arising out of arrests are not barred by § 2680(c), and are in fact permitted by § 2680(h)." 242 F.3d at 604. This also answers the Report's observation that Plaintiff identified no "contrary authority." (Doc. 19 at 8 n.2).

**Objection 4: The Report Places Undue Weight on the Unpublished Decision in Allyn-Feuer**

The Report relies on *Allyn-Feuer* to reject Plaintiff's argument that his claims arose from a law-enforcement seizure rather than any customs function. (Doc. 19 at 8). That reliance is misplaced for three reasons. First, unpublished Fifth Circuit decisions are not binding. *Brewster v. Dretke*, 587 F.3d 764, 768 n.1 (5th Cir. 2009). The Court remains free to follow the published decisions in *Jeanmarie* and *Davila*. Second, *Allyn-Feuer* is factually distinguishable: the claims there arose from a canine sniff and the detention that followed it—steps that are part of the inspection process—while here the officer invoked a warrant as the justification for seizing Plaintiff before any inspection had begun. (Am. Compl. ¶¶ 13–18). Warrant execution is general criminal process, not an inspection technique. Third, the *Allyn-Feuer* panel itself described the result as "troubling," noting that the interpretation may give agents "carte blanche to commit any intentional tort while at any similar border checkpoint." 2026 WL 1269833, at *3. When the

issuing panel questions the fairness of its own rule, the persuasive force of extending that rule is minimal. Plaintiff further preserves his argument, made below (Doc. 16 at 2–3), that acts taken at an interior checkpoint approximately 70 miles from the border to execute a claimed criminal warrant—for which no documentation was ever produced (Am. Compl. ¶¶ 15, 21)—are not acts "in respect of" any customs duty or detention of goods at all.

**Objection 5: Any Dismissal Should Be Preceded by Leave to Amend**

If the Court concludes that the Amended Complaint's allegations are insufficient, the proper course is leave to amend, not dismissal. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam); Fed. R. Civ. P. 15(a)(2). Amendment would not be futile: Plaintiff can allege in good faith that after he was handcuffed, and before any search of his vehicle began, officers conducted a pat-down search of his person—a search incident to the announced arrest, confirming that the seizure being effected was an arrest of his person on the claimed warrant, not an inspection of goods—and can further detail the absence, then and since, of any warrant number, documentation, or record. Moreover, because more than six months have passed since the agency mailed its denial of Plaintiff's administrative claim, see 28 U.S.C. § 2401(b), a dismissal even without prejudice would operate in practical effect as a dismissal with prejudice—a further reason to permit amendment rather than dismiss. Plaintiff acknowledges that *Kosak*, 465 U.S. at 862, addresses injury to property occurring while the property is detained, and respectfully preserves Count III (property damage) for appellate review.

**Objection 6: The Order Denying Preservation and Production of Video Evidence Is Contrary to Law (Rule 72(a))**

The Order denying Plaintiff's Motions (Doc. 19 at 3–4) rests on the legal conclusion challenged in Objection 2 and is contrary to law. The Order holds the recordings immaterial because "none of these questions"—what the officer said about the reason for handcuffing Plaintiff, whether the force facilitated the vehicle inspection or seized Plaintiff's person on a warrant basis, and the

manner and degree of force used—"are dispositive" of jurisdiction. (Doc. 19 at 4). That is true only under the temporal rule. Under the correct causal construction of § 2680(c), those are the very facts on which jurisdiction turns. An order resting on an erroneous legal premise is contrary to law; if the Court sustains Objection 2, the Order's foundation falls with it.

The Order's alternative ground—that the Court "may not otherwise take judicial action in the absence of jurisdiction" (Doc. 19 at 4)—proves too much as applied to preservation. A court may act to preserve existing conditions while its jurisdiction, including review of that determination, remains pending. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290–93 (1947). A preservation directive grants no relief on the merits; it protects this Court's—and a reviewing court's—ability to adjudicate, particularly where the jurisdictional question itself may turn on what the recordings show.

Preservation is also warranted in fact. Defendant has produced three video exhibits of its own selection (Docs. 14-1 to 14-4); Plaintiff's motions sought all video and body-worn-camera footage of the encounter. (Doc. 19 at 3). On information and belief, body-worn-camera and checkpoint surveillance recordings are subject to routine agency retention schedules under which footage not placed on hold is overwritten or destroyed, and Defendant's existing duty to preserve relevant evidence, see *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015), is no substitute for an order while objections and any appeal remain ahead. Plaintiff requests that the Court set aside or modify the Order and direct Defendant to preserve, pending final resolution of this action including any appeal: all body-worn-camera recordings of every officer present at the January 6, 2025 encounter; all fixed or surveillance camera recordings covering the checkpoint's primary and secondary inspection areas for the relevant period; all dispatch, radio, and telephone audio relating to the encounter; all records of any database query, return, or "hit" concerning the warrant invoked, with related incident records; and the three produced exhibits in native format with metadata intact. At a minimum, Plaintiff requests an order of preservation even if production is deferred.

**Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that the Court reject the Report and Recommendation and deny Defendant's Motion to Dismiss (Doc. 14); in the alternative, grant Plaintiff leave to file a Second Amended Complaint before any dismissal; set aside or modify the Order denying Plaintiff's Motions for Preservation and Production of Video Evidence (Docs. 10, 15) and order preservation as set out above; and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Patrick Xuan Mai

Patrick Xuan Mai

Plaintiff, Pro Se

1241 E. Mara PL

Anaheim, CA 92805

(714) 422-8471

patrickmai9696@gmail.com

Dated: July __20_, 2026

CERTIFICATE OF SERVICE

I hereby certify that on July  20, 2026, I filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send notice of electronic filing to all counsel of record, including counsel for Defendant: Matthew Mueller, Assistant United States Attorney, 903 San Jacinto Blvd., Suite 334, Austin, Texas 78701.

/s/ Patrick Xuan Mai

Patrick Xuan Mai